IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| AKAI ALSTON, | |
| Plaintiff, | |
| v. | Civil Action No.: SAG-20-3190 |
| COII SALISBURY, et al., | |
| Defendants. | |

**MEMORANDUM**

Self-represented Plaintiff Akai Alston, an inmate currently incarcerated at Maryland Correctional Institution – Jessup ("MCI-J") in Jessup, Maryland, filed this civil action claiming that Defendants used excessive force against him. Amended Compl., ECF No. 14. On October 7, 2021, Defendants COII Salisbury, John Doe 1, and John Doe 2 filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment. ECF No. 25. Alston responded on November 12, 2021. ECF No. 26. A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons explained below, the court will grant in part and deny in part Defendants' Motion.

**Background**

Alston claims that on May 31, 2019, while he was a pretrial detainee at Baltimore County Detention Center, Defendants assaulted him in an attempt to apprehend him. ECF No. 14 at 2; Response, ECF No. 27 at 2. Alston states that he was experiencing a "mental health breakdown." ECF No. 14 at 2. He asserts that numerous correctional officers responded and he was handcuffed. *Id.* Alston claims that John Doe 1 punched him in the head. *Id.* He further contends that John Doe 2 and COII Salisbury slammed his head into the back of an elevator and smashed his head

into the doors while carrying him to medical. *Id.* at 2-3. Alston claims he suffered neck and back injuries as well as mental and emotional damages. *Id.* at 3.

Officer Anas Elomari attests that they, along with Corporal Herbert Morrison and Sergeant Kenneth Tombaugh were ordered by Sergeant Bradley Thomas to respond to Housing Unit 3C/D for a sally port extraction at approximately 10:45 p.m. on May 31, 2019. Elomari Decl., ECF No. 25-2 at ¶ 7. Elomari observed Alston with his t-shirt over his face making homicidal threats to officers and threatening to fight them. *Id.* at ¶ 8. Sgt. Thomas and Sgt. Tombaugh gave Alston several orders to put his hands behind his back so he could be handcuffed, but he refused. Tombaugh Decl., ECF No. 25-3 at ¶ 8. Alston continued to make threats and spat on the pod window. *Id.* at ¶ 9.

According to Tombaugh, Lt. Wilkerson gave Alston a direct order to comply with being handcuffed, but Alston refused and continued to make threats with the t-shirt over his head. *Id.* at ¶¶ 10-11. After Alston refused a second order, Tombaugh followed orders to disperse OC spray, spraying Alston's upper torso. *Id.* at ¶¶ 12-13. Elomari ordered Alston to put his hands behind his back; Alston again refused. ECF No. 25-2 at ¶ 11. Elomari ordered the sally port door open and pulled Alston into the hallway. *Id.* at ¶ 12. Alston resisted and grabbed Tombaugh's mask. *Id.* at ¶ 13. Elomari put pressure on Alston's left side, but he did not let go of Tombaugh's mask. *Id.* at ¶ 14. Alston was struck in the side twice by Elomari and once in the face by Tombaugh; Tombaugh was then able to place Alston's hands behind his back and Elomari handcuffed him. *Id.* at ¶¶ 15-16; ECF No. 15-3 at ¶ 17. During the altercation, Alston bit Tombaugh's right ring finger, lacerating the knuckle. ECF No. 15-3 at ¶ 19. Tombaugh and Elomari brought Alston to his feet and escorted him to the medical department. *Id.* at ¶ 20; ECF No. 15-2 at ¶ 17. Tombaugh observed that Alston had a laceration on his lower lip. ECF No. 15-3 at ¶ 21.

During Alston's medical evaluation, he again made homicidal threats toward staff and he was placed on suicide watch. ECF No. 15-2 at ¶¶ 18-19. Elomari escorted Alston from the medical department back to his cell and did not have any further contact with Alston following the incident. *Id.* at ¶ 22.

Sergeant Salisbury attests that he was not present at Baltimore County Detention Center during the incident in question. Salisbury Decl., ECF No. 25-4 at ¶ 6. Salisbury avers that he worked the day shift on May 31, 2019, between 7:15 a.m. and 3:15 p.m. *Id.* at ¶ 7.

## Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

The Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Defendants filed a motion styled as a motion to dismiss, or in the alternative, for summary judgment, Alston was on notice that the court could treat the Motion as one for summary judgment and rule on that basis. Accordingly, the court will review Alston's claims against Defendants under the Rule 56(a) standard.

4

Defendants have attached to their Motion evidence including declarations from Officer Anas Elomari, ECF No. 25-2, Officer Kenneth Tombaugh, ECF No. 25-3, and Sergeant Salisbury, ECF No. 25-4.  Alston submits his own declaration in opposition.  ECF No. 27.  However, because the Amended Complaint is not verified, its factual assertions may not be considered as evidence in opposition to Defendants' Motion. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(c)(1)(A); *see also Abdelnaby v. Durham D & M, LLC*, No. GLR-14-3905, 2017 WL 3725500, at *4 (D. Md. Aug. 29, 2017) (awarding summary judgment for the defendants, because the plaintiff could not "create a genuine dispute of material fact 'through mere speculation,'" and "[t]hus, the Court [wa]s left with a record that [wa]s bereft of evidence supporting any of Abdelnaby's arguments") (quoting *Beale v. Hardy*, 769, F.2d 213, 214 (4th Cir. 1985)).

## Discussion

Defendants contend that they are entitled to summary judgment because the force used against Alston was reasonable to restore order.  ECF No. 25-1 at 6.  "[E]xcessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment." *Riley v. Dorton,* 115 F.3d 1159, 1166 (4th Cir. 1997) (en banc).  To successfully state a claim of excessive force in violation of his Fourteenth Amendment rights as a pre-trial detainee, Alston may prevail upon evidence that "the use of force is deliberate – *i.e.*, purposeful or knowing." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015).  Alston need not detail a subjective element of his alleged assailant's subjective state of mind, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97; *see also Dilworth v. Adams,* 841 F.3d 246, 255 (4th Cir. 2016). Objective reasonableness "turns on the 'facts and circumstances of each particular case.'" *Kinglsey*, 576 U.S. at 397 (quoting *Graham v.*

5

*Connor*, 490 U.S. 386, 396 (1989)).  This court is obliged to "make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Id.* at 397.

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992).  This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).  The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010).  The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

First, it is important to note that liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).  The record shows Defendant Salisbury was not present during the incident in question and therefore, he could not have participated in the alleged constitutional violation.  Alston does not dispute that Salisbury was not present that day.  Accordingly, Salisbury is entitled to summary judgment.

The remaining John Doe Defendants have not been specifically identified by Alston.  However, based on the record, it appears that the correctional staff that used force against him during the incident in question are Officer Anas Elomari and Sergeant Kenneth Tombaugh.  The

parties agree that the incident in question began because Alston was causing a disturbance in the sally port in Unit 3C on May 31, 2019, which Alston states was the result of a mental health issue. *See* ECF No. 27 at 2; ECF No. 25-3 at ¶ 6.

Alston locked himself in the sally port, during which time he could not make physical contact with anyone else. ECF No. 27 at 2. Alston was making homicidal threats and threatening to fight officers; which Alston does not deny. *See* ECF No. 27 at 5. Alston was given numerous orders by the tactical team, including Sgt. Thomas, Lt. Wilkerson, Sgt. Tombaugh, and Ofc. Elomari, to comply with being handcuffed, but Alston consistently refused, even after he was sprayed with OC spray by Sgt. Tombaugh. Alston acknowledges that he refused to comply with their orders and did not comply until the OC spray was disbursed. *Id.* at 2, 3. Alston avers that he slipped on the OC spray and was dragged into the hallway and handcuffed. *Id.* at 3.

Elomari attests that he pulled Alston out of the sally port into the hallway to attempt to handcuff him, but Alston continued to resist and grabbed Tombaugh's mask. Elomari first applied pressure to Alston's side, but he did not release the mask. Elomari and Tombaugh subsequently both struck Alston – Elomari twice in his left side and Tombaugh once to his face. Alston bit Tombaugh's ring finger, but Elomari was then able to handcuff Alston, ending the altercation. Alston denies coming in contact with anyone before he was handcuffed. *Id.* at 3, 5. After he was handcuffed, Alston attests that he was punched in the face, stomped on, and choked while in the elevator. *Id.* at 4.

Viewing the evidence in the light most favorable to Alston, Sgt. Tombaugh's use of OC spray to subdue Alston was reasonable given the severity of the threats made by Alston and the numerous orders Alston refused during the incident. However, based on the evidence presented, there is genuine issue of fact as to whether the force used against Alston after he was removed

from the sally port was reasonable. The parties present conflicting facts as to whether there was a physical altercation involving Tombaugh's mask between Alston and Defendants before he was handcuffed and as to whether Defendants used force against Alston after he was handcuffed and compliant. As such, the entry of summary judgment as to Elomari and Tombaugh is inappropriate at this time.

## Conclusion

Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment, construed as a motion for summary judgment, is granted in part and denied in part. Judgment is granted in favor of Defendant Salisbury; Defendants' Motion is otherwise denied. Officer Anas Elomari and Sergeant Kenneth Tombaugh shall be substituted for the two John Doe Defendants. Because it is anticipated that discovery will be necessary to complete the factual record, the Court vacates its previous order denying Alston's request for the appointment of counsel, ECF No. 7, and directs the Pro Bono Coordinator to locate a member of the Maryland Bar to represent Alston. A separate Order follows.

March 8, 2022                                         /s/
Date                                          Stephanie A. Gallagher
                                              United States District Judge